CHARLES J. SCHUCK, Judge.
Thomas L. Johnson, at present fifty-three years of age, brings this claim against the state road commission for injuries suffered by him on or about March 11,1937, while engaged in spreading cinders mixed with calcium chloride on the Kanawha City bridge at about one o’clock a. m. on the day in question.
The facts, as adduced by the evidence, show that claimant had been employed since 1934 by the state road commission, and at the time of the accident in which he was injured, was known as a maintenance foreman. On March 10, 1937, claimant was called by one Joe L. Stern, the assistant superintendent of county roads for Kanawha county, to take charge of a crew to spread cinders on the various bridges located at and near *254 Charleston, on which bridges there was a collection of frost, thereby making them dangerous to traffic, and requiring the spreading of cinders as a matter of safety. It seems that but three men, including the claimant, could be obtained for the work, it being midnight on the day in question, and claimant was placed in charge and was assisting a fellow workman in spreading the cinders, while a third, who was a son-in-law of claimant, drove the truck which was carrying the material to be used on the bridges. The evidence shows that claimant had done work of this nature before, and, consequently, knew of any hazard that might be connected with its operation. Two of the three bridges had already been given attention, and about midnight or shortly thereafter, claimant and the other two men of the crew repaired to the garage of the state road commission located on Wilson street, in the city of Charleston, for more material, and then started for what is known as the Kanawha City bridge, where the work was seemingly to be completed. While the operation of spreading the cinders was being carried on on the last mentioned bridge; and while claimant and his fellow workmen were walking behind the truck carrying the material, shoveling it from the truck, to be spread on the bridge; and while the truck was moving at a speed about as fast as a man could walk; and when the crew in question had reached a slight incline in the bridge toward the Kanawha City side of the bridge, an automobile speeding in the direction of said Kanawha City, and driven by one Brierly, ran into the claimant, throwing him violently to the bridge, passing over part of his body. Before he could be extricated from his perilous situation another automobile being driven in the same direction as the Brierly car ran into the Brierly car and into and upon and over the claimant, causing very serious injuries and placing the claimant in such a critical condition that for a long time his life was despaired of. He sustained compound fractures of both legs and of the left arm. His nose was broken and he suffered skull injuries, and was unable, by reason of said injuries, to return to his work for nearly a year thereafter. He had been earning approximately from $120.00 to $130.00 per month at the time of his injuries. While he was confined in the hospital he was paid approximate *255 ly for two months salary by the road commission. He returned to his work in the month of February 1938, receiving approximately $110.00 to $120.00 per month for some time, but whs gradually given increases of pay; and since October 1941, he has been paid at the rate of $200.00 per month and given work that requires his attention at the shop or building where the equipment of the state road commission is kept and maintained. He is known now as a shop foreman. After he had been dismissed from the hospital, suits were commenced in the circuit court of Kanawha county in his behalf against the owners of the automobiles that had run into and injured him; and after the payment of his attorney fees he received approximately $8,-250.00. His hospital and doctors’ bills amounted to approximately $2,500.00, which bills were paid out of the amount that he had received by reason of the actions at law that had been commenced by him. In 1939 the Legislature of the state of West Virginia made an appropriation to him to cover the said hospital and doctor bills amounting to $2,459.05, which amount was ultimately paid to the claimant’s attorney, but from which amount it seems that claimant’s attorney deducted the sum of $250.00 for services rendered in having the said appropriation made by the Legislature aforesaid. Claimant also maintains that he has been obliged to pay approximately $1,000.00, since returning to his work, for doctor and medicine bills, although no- evidence is introduced in the slightest degree to sustain this item. Claimant now asks that the state make him a further payment in compensation for the injuries received.
That the work in question involved danger and risk on the part of claimant on the night in question is a settled fact. This, claimant well knew. In fact he had done similar work under similar circumstances and could readily realize that it was fraught with a certain degree of danger to those who were called upon to carry on the operation of spreading the cinders on the bridge in question. After completing the work on the second bridge the three men eárrying on the work, of whom the claimant was one, and who was in charge, repaired to the state garage to load material on the truck for the purpose of using it on the third or Kanawha City bridge. In this garage *256 were flares, lights, lanterns, signs and other equipment that would be necessary to warn not only the traveling public, but to protect the crew that was working on the bridge as well; and all this equipment was at the disposal of the claimant without let or hindrance so far as its use for the work in question was concerned. He could have taken flares, lights, lanterns, signs, and placed them in the truck previous to going to the Kanawha City bridge, and would have been entirely within his rights, not only in protecting himself and the other members of his crew, but the traveling public as well, by the use of these lights and flares.
However, it is maintained by the claimant that under the circumstances it would not have been expedient to use any signs, lanterns or flares, since it required one man to drive the truck, two others to unload and spread the cinders, and for the use of the signs, lanterns, flares or lights another man or employee would have been needed. We do not agree with this proposition. We feel that in view of the dangerous and hazardous work that the crew was called upon to perform, that it was midnight or thereafter, and necessarily quite dark at that season of the year, and that claimant knew or should have known that automobiles would be passing over the said bridge while the work was being carried on, that flares or lanterns could have been used under the circumstances, even although the work of spreading the cinders would have been from time to time halted till the flares or lanterns could have been moved in closer proximity to the truck that was hauling the material. What was there to prevent the claimant or crew, as the spreading progressed, from placing the flares or lanterns every fifty or seventy-five feet back of the truck, which was only moving, as shown by the evidence, as fast as a man could walk, and then moving the flares or lanterns up closer to the work that was being carried on after the distance of fifty or sevénty-five feet had been covered by the spreading of the cinders? Surely this would have been a precaution that would perhaps have entirely avoided the accident in question, and, consequently, the injuries to the claimant; and we fail to understand why such measures were not employed under the existing circumstances. *257 Hie claimant was even charged with a higher degree of care, perhaps, than the other two men of the crew, since lie was in charge of the work. The witness Bratton, the man who was working with claimant in unloading the cinders, says that several days after the accident they were instructed by their' superiors, employed by the road commission, to use flags, lights and flares in the future on all curves and bridges when work of this kind was carried on. Did the lack of these instructions make the state road commission liable to the claimant? We think not. His experience in similar work under similar circumstances had undoubtedly taught him that necessary precautions must be taken when such work is carried on; and his failure to do so under all the circumstances was, in our judgment, a very grave degree of negligence. The witness Cavendish, the district engineer of the road commission at that time, testified (record p. 124) that crews were instructed to use lights whenever necessary. This instruction would seem to be reasonable, and we have no doubt that in the course of his several years of employment previous to the time of the accident, claimant knew the importance of such instructions and their beneficial effect when followed by those carrying on work such as claimant did at the time of his injuries.
The state or its agency, the state road commission, is not an absolute guarantor of the safety of its employees, nor was it such guarantor at the time of the accident; and when claimant, with full knowledge of the danger incident to the work that he was about to perform, had at his command and disposal the means of protecting himself by the use of available equipment, and the use of which would in all probability have prevented the accident to him, and failed to do so, then he was guilty of such negligence as must necessarily preclude him from an award on any legal basis.
We feel further that in view of the fact that he received approximately $8,000.00 after the payment of his doctors’ and hospital bills, from those immediately, responsible for his injuries, and that he has been given steady employment since 1938 by the road commission, and since October 1941 has been *258 receiving a salary at an increase of fifty per cent over and above the highest he had received previous to the time of his injury, that the state of West Virginia and the state road commission have fully discharged their obligations, which in good conscience they may have owed to the claimant as an employee.
In view of all of these facts, taken into consideration with what we believe to have been an extreme degree of negligence on the part of the claimant himself, we are unable to sustain the claimant’s theory for compensation advanced by him, and, therefore, refuse an award.